# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| RANDALL DALE JAMES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-514-D-BH |
| | § | |
| NANCY A. BERRYHILL, ACTING, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order dated July 3, 2017 (doc. 21), this social security appeal was referred for full case management. Before the Court for recommendation are *Plaintiff's Motion for Summary Judgment*, filed May 30, 2017 (doc. 18), and *Defendant's Cross-Motion for Summary Judgment*, filed June 20, 2017 (doc. 20). Based on the relevant filings, evidence, and applicable law, the plaintiff's motion should be **GRANTED**, the defendant's cross-motion should be **DENIED**, and the Commissioner's decision should be **REVERSED** and **REMANDED** for further administrative proceedings.

## I.  BACKGROUND[1]

### A.   Procedural History

Randall Dale James (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying his claims for disability insurance benefits (DIB) under Title II of the Social Security Act (Act) and for supplemental security income (SSI) under Title XVI

---

[1] The background information is summarized from the record of the administrative proceeding, which is designated as "R."

of the Act. (R. at 1-6.) On November 13, 2013, Plaintiff filed his applications for DIB and SSI, alleging disability beginning on May 13, 2013. (R. at 21, 181, 184.) His claims were denied initially and upon reconsideration. (R. at 73, 85, 97, 109.) Plaintiff requested a hearing before an Administrative Law Judge (ALJ), and he personally appeared and testified at a hearing on October 19, 2015. (R. at 36-61.) On November 19, 2015, the ALJ issued a decision finding Plaintiff not disabled and denying his claims for benefits. (R. at 18-34.)

Plaintiff timely appealed the ALJ's decision to the Appeals Council. (R. at 16.) The Appeals Council denied his request for review on December 27, 2016, making the ALJ's decision the final decision of the Commissioner. (R. at 1-6.) Plaintiff timely appealed the Commissioner's decision under 42 U.S.C. § 405(g).  (*See* doc. 1.)

**B.     Factual History**

  **1.     Age, Education, and Work Experience**

Plaintiff was born on May 7, 1966, and was 49 years old at the time of the hearing before the ALJ. (R. at 28.) He had a high school education and communicated in English fluently. (R. at 28.) He had past relevant work as a construction worker and cabinet installer. (R. at 27-28.)

  **2.     Medical Evidence**

On May 13, 2013, Plaintiff presented to the emergency room at Dallas Regional Medical Center (Dallas Regional) after falling off of his roof and hitting a pole. (R. at 259.) He complained of sharp pains in his neck, chest, left arm, and left shoulder. (R. at 259.) During the physical examination, his neck had a "supple, full range of motion," but his left shoulder, wrist, and elbow showed "pain on active and passive movement." (R. at 260-61.) He was awake, alert, and oriented to person, place, and time. (R. 260.) X-rays taken of his right tibia and fibula, left elbow, left

forearm, pelvis, left shoulder, chest, and left humerus showed "no radiographic abnormalities" with no evidence of fracture or erosive changes. (R. at 263-74.) He was diagnosed with abrasion, a "closed head injury," contusion, fracture, multiple trauma, and muscle strain, prescribed two pain medications, and discharged the same day in a stable condition. (R. at 258, 261.)

On October 11, 2013, Plaintiff met with Dr. J. Douglas Kirkpatrick, D.C., of the Dallas Wellness Center for an "injury initial examination/evaluation report." (R. at 282-84.) He reported constant pain rated as "9/10" in his left shoulder and bilateral mid-back. (R. at 282.) Dr. Kirkpatrick conducted an orthopedic evaluation that showed a positive "supraspinatus test" and significant limitations in his left shoulder's range of motion and ordered an MRI of Plaintiff's left shoulder based upon his evaluation. (R. at 282-83.) He provided a "fair" prognosis and diagnosed Plaintiff with shoulder sprain/strain, shoulder cartilage disorder, and throacic sprain/strain. (R. at 283.) He recommended massage, therapeutic exercises, and kinetic exercises to increase mobility, strength, flexibility, and endurance in his left shoulder 3 times per week for 8 weeks. (R. at 283.)

On October 17, 2013, Plaintiff presented to DFW MRI to receive an MRI of his left shoulder as ordered by Dr. Kirkpatrick. (R. at 281.) The MRI results showed "type 2 acromion and capsular hypertrophy of the acromioclavicular joint" and a "full thickness retracted tear of the supraspinatus tendon." (R. at 281.) There was "no evidence of a fracture or other acute abnormality." (R. at 281.)

On November 25, 2013, Dr. Kirkpatrick completed a Residual Functional Capacity (RFC) Questionnaire based upon Plaintiff's examination and MRI results. (R. at 288-89.) He indicated that Plaintiff had a poor prognosis due to "left shoulder pain." (R. at 288.) He opined that Plaintiff had the following limitations: could walk 1 city block without rest or significant pain; could sit 20 minutes at one time but could not sit 1 hour in an 8-hour workday; could stand/walk 1 hour at a time

3

and 2 hours total in an 8-hour workday; required unscheduled breaks during the workday every hour lasting 15 minutes in duration; could not use his left hand to grasp, twist or turn objects at all but could use his right hand 100 percent of the workday; could not use his left fingers for fine manipulations at all but could use his right fingers 100 percent of the workday; and could not use his left arm for reaching but could use his right arm 100 percent of the day. (R. at 288-89.)

Between December 31, 2013, and January 3, 2014, Plaintiff was admitted to the Dallas Regional emergency room for cellulitis in his left hand and possible blood poisoning. (R. at 290-91.) He had a "deep space infection" in his left hand with a "limited active range of motion due to pain," but he was otherwise normal. (R. at 297-99.) X-rays of his left hand did not show any abscess formation, but an ultrasound showed deep vein thrombosis developing in a superficial femoral vein. (R. at 303-05, 310.) After 4 days of IV antibiotics, the swelling and pain in his left hand "improved considerably." (R. at 293.) He was diagnosed with acute cellulitis in his left hand, elevated liver enzymes, and systemic inflammatory response secondary to cellulitis. (R. at 292.) He was discharged in stable condition. (R. at 292.)

On April 3, 2014, Plaintiff met with Dr. Lige B. Rushing, M.D., M.S., P.A., for a consultative internal medicine examination. (R. at 325-27.) Plaintiff reported that he had experienced a "continuous level of pain" in his left shoulder after his fall from the roof of his house. (R. at 325.) Dr. Rushing noted that Plaintiff's left shoulder was abducted by 10 degrees, he could not "elevate his arm above shoulder level extension," and the strength in his left arm was "4/5 secondary to pain." (R. at 326.) He also reviewed the results of Plaintiff's MRI from October 17, 2013. (R. at 326.) Dr. Rushing ultimately opined that Plaintiff had "substantial limitation of function" in his left shoulder where his "ability to lift, push, pull, carry, reach overhead, and [use his] left arm in a

4

normal manner" was "severely impaired." (R. at 327.)

On April 15, 2014, Dr. John Durfor, M.D., a state agency medical consultant (SAMC) reviewed Plaintiff's medical evidence on record and completed a Physical RFC Assessment. (R. at 67-69.) He opined that Plaintiff had the following limitations: occasionally able to lift/carry 20 pounds; frequently able to lift/carry 10 pounds; stand/walk for about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; occasionally able to push/pull; unlimited ability to climb stairs, crouch, and crawl; occasionally able to climb ladders/ropes/scaffolds; occasionally able to reach with his left upper extremity; unlimited ability to reach with right upper extremity; and no visual, communicative, or environmental limitations. (R. at 68-69.)

On May 27, 2014, Dr. Kim Rowlands, M.D., a SAMC, re-evaluated Plaintiff's medical evidence on record and submitted a Physical RFC assessment upon reconsideration. (R. at 91-93.) She agreed with Dr. Durfor's opinion on Plaintiff's exertional and manipulative limitations, except that she opined that he had an unlimited ability to push/pull. (R. at 91-92.) She also agreed that Plaintiff was limited to occasional reaching with his left upper extremity. (R. at 92.) She further opined that he had no visual, communicative, or environmental limitations. (R. at 93.)

On October 14, 2014, Dr. Kirkpatrick completed another RFC Questionnaire on behalf of Plaintiff. (R. at 332-34.) He agreed with his original RFC assessment, except he now opined that Plaintiff could occasionally lift less than 10 pounds but never more; could use his right hand 50 percent of the day to grasp, twist, and turn objects and left hand 15 percent of the day; could use his right fingers 50 percent of the day for fine manipulation and left fingers 15 percent of the day; and could use his right arm for reaching 50 percent of the day while he could not use his left arm at all. (R. at 333-34.)

On November 6, 2014, Plaintiff was admitted to Parkland Memorial Hospital (Parkland) for surgical repair and removal of an ventral hernia that had caused abdominal pain. (R. at 377-425.) After the surgery, he experienced complications with sharp abdominal pain and swelling. (R. at 353-54.) He was administered pain medication, and his surgical scar was opened to drain the "serous fluid." (R. at 355-56.) There was "no evidence of hernia recurrence," and the pain was "likely from transfascial sutures." (R. at 361.) The wound was cleaned and re-dressed, and Plaintiff reported improvements in the pain. (R. at 362-63.) He was prescribed pain medication and discharged in stable condition. (R. at 364.)

On May 5, 2015, Plaintiff presented to the emergency room at Doctors Hospital at White Rock (Doctors Hospital) with injuries due to another fall off his roof. (R. at 337-49.) He reported pain in his right shoulder, right elbow, right hip and clavicular after he "slipped and fell off . . . [his] roof." (R. at 338.) The physical examination showed a limited range of motion in his right shoulder and a "bony deformity noted on right clavicle." (R. at 338.) It was noted that Plaintiff was "uncomfortable . . . [and showed] facial grimacing," but he was in "no apparent distress." (R. at 339.) Swelling was noted in his right upper extremity, but there was no evidence of acute fracture or dislocation. (R. at 345.) He was diagnosed with joint pain of shoulder, upper limb abrasion, and lower extremity pain, and it was recommended that he meet with an orthopedic surgeon for further evaluation. (R. at 337, 345.) He was discharged later that day in a stable condition and was prescribed pain medication. (R. at 346-48.)

### 3. Hearing Testimony

On October 19, 2015, Plaintiff and a vocational expert (VE) testified at a hearing before the ALJ. (R. at 37-61.) Plaintiff was represented by an attorney. (R. at 38.)

### a.     *Plaintiff's Testimony*

Plaintiff testified that he graduated from high school, stood 6'2" tall, and weighed between 225 and 230 pounds. (R. at 44.) He was right-handed and lived with a roommate. (R. at 44.) He had worked until May 13, 2013, when he fell off his roof and hurt his left shoulder. (R. at 44-45.)

Plaintiff had most recently worked as a painter for several years. (R. at 45.) He previously worked as a cabinet installer at Interior Fixture Installations, Inc., for eight months between 2003 and 2004. (R. at 45.) He then worked for a year at GNP, Inc., where he installed sheet metal trim on rooftops. (R. at 45-46.) In 2001, he had been employed by Glasco Systems, where he built walls and installed flooring. (R. at 46.)

Plaintiff testified that his main injuries were due to his fall in 2013. (R. at 47.) He had seen a chiropractor but never received any injections, physical therapy, or surgery after his fall. (R. at 47-48.) He suffered constant pain in his left shoulder, could not raise that arm without additional pain, and had limitations in his ability to handle and grip things with his left hand. (R. at 48.) He also had pain in his calves due to cellulitis, where he could stand for only 30 minutes and walk one city block before needing to stop due to the pain. (R. at 49-51.) He could sit for only 35 or 40 minutes before needing to stand up and move. (R. at 52.) He could lift/carry 20 pounds with his right hand and was unable to lift anything with his left hand. (R. at 53.)

On a typical day, Plaintiff helped to take care of his elderly roommate, did the housework, washed dishes, cooked, and cleaned. (R. at 54.) Some housework, such as vacuuming, made his left shoulder numb. (R. at 54-55.) He could drive to the grocery store and purchase groceries, but he only used his right arm to do so. (R. at 54.) He also helped take care of his grandchild but could hold her only with his right arm. (R. at 55.)

7

Plaintiff's attorney then asked if he thought that he would be able to work at a job where he sat all day with a "break for 10-15 minutes every 2 hours and get a 30-minute lunch break" and never had to lift or carry anything over 10 pounds. (R. at 55.) Plaintiff responded that he was capable of working that job if he could "do it with [his] right arm" only. (R. at 55.)

        **b.**     *VE's Testimony*

The VE testified that she had reviewed Plaintiff's work history and determined that he had the following past relevant work: construction worker, DOT 869.664-026 (heavy, SVP: 4) and cabinet installer, DOT 869.684-026 (medium, SVP: 4). (R. at 57.)

The ALJ asked the VE to consider a hypothetical person with the same age and education as Plaintiff and the following limitations: frequently able to lift 10 pounds; occasionally able to lift 20 pounds; able to stand/walk/sit for 6 hours out of an 8-hour workday; occasionally able to climb ladders/ropes/scaffolds; occasionally able to reach overhead with his left upper extremity; and frequently able to reach, handle, and finger with his left upper extremity. (R. at 58-59.) The VE responded that this hypothetical individual could not perform any of Plaintiff's past relevant work. (R. at 59.)

The ALJ then asked the VE if that hypothetical person could perform any other work in the national and regional economy. (R. at 59.) The VE responded that this hypothetical person could perform the following jobs: assembler, DOT 706.684-022 (light, SVP: 2) with 116,533 jobs in the national economy and 5,118 in Texas; assembly line worker, DOT 729.687-010 (light, SVP: 2) with 188,481 jobs nationally and 8,414 in Texas; and collator, DOT 208.685-010 (light, SVP: 2) with 42,915 jobs nationally and 3,776 in Texas. (R. at 59.)

The ALJ then asked the VE to consider a second hypothetical person with the same age and

8

education as Plaintiff and the following limitations: frequently able to lift 4 pounds; occasionally able to lift 8 pounds; able to stand/walk/sit for only 2 hours out of an 8-hour workday; required unscheduled 15 minutes breaks every 2 hours; occasionally able to climb ladders/ropes/scaffolds; occasionally able to reach, handle, and finger with both his right and left upper extremities. (R. at 60.) The VE responded that this hypothetical individual could not perform any work in the national or local economy. (R. at 60.)

Plaintiff's attorney then asked if Plaintiff had any skills from his past relevant work that would transfer to sedentary work. (R. at 60.) The VE responded that he had no skills that would transfer to sedentary jobs. (R. at 60-61.)

## C.     **ALJ's Findings**

The ALJ issued his decision denying benefits on November 19, 2015. (R. at 21-29.) At step one,[2] he determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of May 13, 2013. (R. at 23.) At step two, the ALJ found that the medical evidence established that Plaintiff had the severe impairment of left shoulder derangement. (R. at 23-24.) At step three, the ALJ concluded that Plaintiff's severe impairments or combination of impairments did not meet or equal the requirements for presumptive disability under the listed impairments in 20 C.F.R. Part 404. (R. at 24.)

The ALJ then determined that Plaintiff retained the RFC to perform light work in that he could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk/sit for 6 hours each of an 8 hour workday; climb ladders, ropes, and scaffolds occasionally; overhead reaching with the non-dominant left upper extremity could be done occasionally; reaching otherwise with the left

---

[2] The five-step analysis used to determine whether a claimant is disabled under the Social Security Act is described more specifically below.

upper extremity could be done frequently; and handling, fingering, and feeling could be done frequently with the left upper extremity. (R. at 24-27.)

At step four, the ALJ determined that Plaintiff could not return to any of his past relevant work experience. (R. at 27.) At step five, the ALJ relied upon the VE's testimony to find that Plaintiff was capable of performing work that existed in significant numbers in the national economy, including jobs such as assembler, assembly line worker, and collator. (R. at 28.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, from the alleged onset of disability date of May 13, 2013, through the date of his decision. (R. at 29.)

## II. LEGAL STANDARD

Judicial review of the commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence supports the Commissioner's decision. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* The Court may rely on decisions in both areas, without distinction, when reviewing an ALJ's decision. *Id.*

To be entitled to social security benefits, a claimant must prove he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 189, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" will not be found to be disabled.

4. If an individual is capable of performing the work he had done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his work, other factors including age, education, past work experience, and residual

11

> functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. § 404.1520(b)-(f)) (currently 20 C.F.R. § 404.1520(a)(4)(i)-(v)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by vocational expert testimony, or other similar evidence. *Froga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III. ISSUES FOR REVIEW

Plaintiff presents two issues for review:

1. The ALJ failed to weigh or otherwise offered no legitimate basis for rejecting the opinion of consultative examiner Dr. Rushing. This was harmful error as the opinion is clearly more limiting than the residual functional capacity determination and the relied upon hypothetical to the vocational expert; as well as inconsistent with the requirements of the jobs identified by the vocational expert.

2. The ALJ's Step 5 determination is unsupported by substantial evidence because the ALJ relied on vocational testimony elicited in response to an incomplete hypothetical question.

(doc. 19 at 5.)

### A. RFC Assessment

Plaintiff argues that the ALJ erred during the RFC assessment by failing to assign weight to Dr. Rushing's examining source opinions on the limitations in his left arm and shoulder. (doc. 19 at 12-15.)

Residual functional capacity, or RFC, is defined as the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, at *1.

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). Every medical opinion is evaluated regardless of its source. 20 C.F.R. § 416.927(c). Generally, an opinion from an examining source is given more weight than the opinion from a non-examining source. *Id*. However, the "standard of deference to the examining physician is contingent upon the physician's ordinarily greater familiarity with the claimant's injuries. [W]here the examining physician is not the claimant's treating physician and where the physician examined the claimant only once, the level of deference afforded his opinion may fall correspondingly." *Rodriguez v. Shalala*, 35 F.3d 560 (5th Cir. 1994) (unpublished) (citing *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)). The ALJ is also free to reject the medical opinion of any physician when the evidence supports a contrary conclusion. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981).

13

In his decision, the ALJ first identified the medical records from Dallas Regional, Parkland, and Doctors Hospital, as well as the medical opinions and RFC assessments from Drs. Rowlands, Kirkpatrick, and Rushing. (R. at 26-27.) He stated that he "considered the opinions of [the SAMCs] who evaluated this issue," and he explicitly assigned "little weight" to Dr. Kirkpatrick's medical opinions because they were "too vague" and "not well supported by the remainder of the record or consistent with the record as a whole." (R. at 27.) While the ALJ identified Dr. Rushing's examining medical opinions on the limitations in Plaintiff's left arm and shoulder, he did not directly assign weight to them. (R. at 26-27.) The ALJ ultimately found that the RFC in Plaintiff's left upper extremity was limited to occasional overhead reaching; frequent reaching in all other directions; frequent handling, fingering, and feeling; and no additional limitations on his ability to push/pull. (R. at 24.)

Though the Commissioner argues that the ALJ identified and "arguably gave Dr. Rushing's opinion significant weight" (doc. 20 at 5-7), the ALJ never directly assigned weight to or explained how Dr. Rushing's opinions on the "severe[] impair[ment]" in Plaintiff's ability to lift, push, pull, carry, and reach were incorporated into the RFC (R. at 25-27). This was error. *See Ortiz v. Berryhill*, No. 3:16-CV-75-M-BH, 2017 WL 1185273, at *9 (N.D. Tex. Mar. 3, 2017), *adopted by* 2017 WL 1184225 (N.D. Tex. Mar. 29, 2017); *see also Foley v. Colvin*, No. 3:14-CV-4176-BN, 2015 WL 5836173 at *5 (N.D. Tex. Oct. 2, 2015) (finding that, even though the ALJ identified examining medical opinions, his failure to "expressly explain the weight" given to these opinion was error).

B. **<u>Harmless Error</u>**

The Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party are

14

affected." *Mays v. Bowen*, 837 F.2d 1362, 1363-64 (5th Cir. 1988). "[E]rrors are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *Bornette v. Barnhart*, 466 F. Supp. 2d 811 (E.D. Tex. Nov. 28, 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)).

     Plaintiff argues that if the ALJ had explicitly weighed Dr. Rushing's medical opinions on the manipulative limitations in his left arm and shoulder, it would have conceivably changed his RFC and the disability determination because the opined limitations were "inconsistent with the requirements of the jobs identified by the [VE]" during the hearing. (doc. 19 at 12.) The ALJ's decision identified three medical opinions on the limitations in Plaintiff's left upper extremity: (1) Dr. Rowlands's opinion that his "[r]eaching overhead and in any direction with the left extremity [was] limited to occasional;" (2) Dr. Kirkpatrick's opinion that he could not use his left arm for reaching for any reasonable amount of time during an 8-hour workday; and (3) Dr. Rushing's opinion that his ability to push, pull, carry, and reach with his left arm was "severely impaired."[3] (R. at 26-27.) The medical record also contains a fourth RFC assessment from Dr. Durfor, in which he opined that Plaintiff was occasionally able to push/pull and occasionally able to reach with his left upper extremity. (R. at 68-69.) The ALJ did not adopt any of these opinions in his decision, but he instead found that Plaintiff could frequently, as opposed to occasionally, reach with his left upper

---

[3] The ALJ also identified Plaintiff's emergency room records from Dallas Regional, Parkland, and Doctors Hospital, but none of these records included medical opinions expressly on Plaintiff's limitations in his left upper extremity. (R. at 26.)

15

extremity in all directions except overhead.[4] (R. at 24.) Based upon this RFC, the ALJ relied on the VE's testimony and found at step five that Plaintiff had not been disabled because he could perform three different jobs that all required the ability to reach, handle, and finger frequently.[5]

The Commissioner argues that the decision is supported by substantial evidence from Plaintiff's own testimony and a lack of therapy in the medical evidence. (doc. 20 at 5-7.) The ALJ's decision explained that the credibility of Plaintiff's symptoms was "offset by the fact that the record reflects that [Plaintiff] admitted only being limited in his left shoulder," and by his testimony at the hearing describing how he "managed well with his right arm taking care of his personal care needs." (R. at 27.) It also noted that Plaintiff had "only received conservative treatment for his physical problems" and never received injections or physical therapy. (R. at 27.) The decision, however, never addressed how he determined the extent of the manipulative limitations in Plaintiff's left upper extremity or the basis for his finding that Plaintiff could frequently reach in all directions except overhead. The medical evidence and record, moreover, do not provide substantial evidence to support this finding, and instead support additional restrictions on his left upper extremity.[6]

Because the medical opinions as to Plaintiff's manipulative limitations are varied and not fully consistent with the ALJ's findings, it is not inconceivable that the ALJ would have included additional limitations to Plaintiff's left upper extremity in the RFC if he had formally weighed Dr.

---

[4] "Frequently" means that the activity or condition "occurs one-third to two-thirds of an 8-hour workday," while "occasionally" means that the activity or condition "occurs at least once up to one-third of an 8-hour workday." *See* SSA Program Operations Manual System (POMS) § DI 25001.001.

[5] The ALJ found that Plaintiff could perform the jobs of assembler, assembly line worker, and collator. (R. at 28.) All of these positions are identified by the Department of Labor as requiring the ability to reach, handle, and finger frequently. *See* U.S. DEP'T OF LABOR, SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES at 134, 284 (1993).

[6] The least restrictive medical opinion on Plaintiff's manipulative limitations was Dr. Rowlands's opinion that his "[r]eaching overhead and in any direction with the left extremity [was] limited to occasional." (R. at 26-27.)

16

Rushing's medical opinions. *See McAnear v. Colvin*, No. 3:13–CV–4985-BF, 2015 WL 1378728 at *5 (N.D. Tex. Mar. 26, 2015) (finding remand was required because there was a realistic possibility of a different conclusion by the ALJ where the court was unsure of whether the ALJ considered the medical source's opinion and whether such a review would have changed the outcome of the decision). There is also no evidence in the record as to whether the jobs identified by the VE could be performed with additional manipulative limitations, and Plaintiff suffered prejudice because the ALJ concluded that he could perform those jobs, which led to a finding of not disabled. *See Foley*, 2015 WL 5836173, at *5. Even if the ALJ had afforded Dr. Rushing's opinions no weight at all, it is not the duty of the reviewing court to "substitute its judgment of the facts for the ALJ's, speculate on what the ALJ could have done or would do on remand, or accept a *post hoc* rationalization." *See Benton v. Astrue*, No. 3:12-CV-0874-D, 2012 WL 5451819 at *8 (N.D. Tex. Nov. 8, 2012).

In conclusion, the ALJ's error was not harmless because it is not inconceivable that he would have reached a different decision had he properly weighed Dr. Rushing's assessment.[7] *See Singleton v. Astrue*, No. 3:11–CV–2332-BN, 2013 WL 460066 at *6 (N.D. Tex. Feb. 7, 2013) (finding the ALJ's failure to consider a medical source opinion was not harmless error because the court could not say what the ALJ would have done had he considered the opinion, and had he considered the opinion he might have reached a different decision).

## IV. RECOMMENDATION

Plaintiff's summary judgment motion should be **GRANTED**, the Commissioner's cross-

---

[7] Because the ALJ erred during the RFC assessment when evaluating Dr. Rushing's medical opinions, Plaintiff's second issue need not be considered as it is also based upon "the ALJ's errors in evaluating Dr. Rushing's opinions." (doc. 19 at 16-17.)

17

motion should be **DENIED**, and the Commissioner's decision should be **REVERSED** and **REMANDED** for further administrative proceedings.

**SO RECOMMENDED** on this 1st day of November, 2017.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE